313 So.2d 108 (1975)
NATIONAL CAR RENTAL SYSTEM INC., and the Travelers Indemnity Company, a Connecticut Corporation, Appellants,
v.
SONESTA INTERNATIONAL HOTELS CORP. et al., Appellees.
No. 74-1029.
District Court of Appeal of Florida, Third District.
May 13, 1975.
Rehearing Denied June 18, 1975.
High, Stack, Davis & Lazenby and Alan R. Dakan, Miami, for appellants.
Knight, Peters, Hoeveler, Pickle, Niemoeller & Flynn, Jeanne Heyward, Preddy, *109 Haddad, Kutner & Hardy, Miami, for appellees.
Before BARKDULL, C.J. and NATHAN, J. and CHARLES CARROLL (Ret.), Associate Judge.
NATHAN, Judge.
This case involves a determination of responsibility for coverage as between insurance companies in an action for wrongful death resulting from an automobile accident. Third-party plaintiffs, National Car Rental System, Inc., and its insurer, the Travelers Indemnity Company, appeal from two summary final judgments in favor of third-party defendants, Sonesta International Hotels Corporation, Florida Sonesta Corporation, Key Biscayne Hotel Corporation (d/b/a Sonesta Beach Hotel), Maryland Casualty Company, and Long Island Insurance Company, all in the actions for indemnity.
November 15, 1970, Key Biscayne Hotel Corp., d/b/a Sonesta Beach Hotel, by its agent, Florida Sonesta Corporation, hereinafter referred to as Sonesta, entered into a concession agreement with National Car wherein Sonesta (Beach Hotel) covenanted that it had the right to enter into the agreement with National and to grant National the rights set forth and provided therein. National was granted the exclusive car rental concession at Sonesta. Sonesta agreed not to permit any other firm to conduct, solicit, advertise or promote any car rental business upon its premises; agreed to advertise to its guests the availability of National Car's rental service, and agreed to recommend to its guests only the use of National Car's services and place National Car's brochures in all of the guest rooms of Sonesta's hotel.
The concession agreement also provides:
"SIXTH: National agrees to defend, indemnify and hold harmless Hotel from all claims for loss or damage for personal injury or death and damage, or destruction of property arising out of or in connection with the operation of National's business on or off the premises; except for loss or damage caused by the negligence of Hotel, its agents or employees.
* * * * * *
EIGHTH: In addition to the consideration given by National for the rights hereinabove bargained for, National further agrees that it will provide one 1971 Ford or Chevrolet Station Wagon and two 1971 Chevrolet or Ford Sedans at no cost to the Hotel during the term of this agreement. However, all gasoline, oil and other road charges will be paid for by Hotel and Hotel will be responsible for all collision or upset damage to the three vehicles furnished up to the first $100 of damage and any insurance carried by Hotel will be deemed to be primary in respect to any insurance which may be carried by National. National will provide public liability insurance in limits of not less than $100,000 any one person, $300,000 any one accident respectively, and property damage insurance in the sum of $25,000.
The policies providing such insurance shall name Hotel as an additional insured, and Certificates of said policies shall be delivered to Hotel upon the execution and each extension of this agreement. Each policy shall provide that it may not be cancelled without at least ten days' prior written notice to Hotel."
Travelers issued two policies to National Car, one policy with limits of $100,000 and $300,000 and a "manuscript" policy in the amount of 20 million dollars. Maryland Casualty is Sonesta's insurer.
On April 1, 1972, William J. Whittle, the former general manager of Sonesta, while operating one of the three vehicles owned by National Car and leased without charge to Sonesta, was involved in an accident which resulted in the death of a minor. A wrongful death action was filed against Whittle, National Car and Travelers, resulting *110 in a $370,000 judgment which was satisfied by Travelers.
During the litigation, National Car and Travelers filed a third-party complaint against Sonesta, Maryland Casualty and Long Island, Whittle's insurer, seeking indemnity or contribution. The court entered an order severing the third-party complaint from the main suit, thus preserving the insurance coverage aspect of the case until after the main trial.
Sonesta and Maryland Casualty answered and counterclaimed against National Car and Travelers seeking a judicial determination that National Car was under an obligation to secure public liability insurance which would afford primary coverage for any liability which might arise as a result of the main lawsuit, and that Travelers provided National Car with such primary insurance.
All parties to the third party complaint filed motions for summary judgment. The court entered summary final judgments in favor of third party defendants Sonesta, Maryland Casualty, and Long Island. On appeal therefrom, National Car and Travelers contend that the court erred in its determination that coverage under the Travelers' policies was primary.
The parties are in conflict as to the construction and interpretation of those portions of the agreement entered into between National and Sonesta quoted above, especially the portion of paragraph 8 providing that the "... Hotel will be responsible for all collision or upset damage to the three vehicles furnished up to the first $100 of damage and any insurance carried by Hotel will be deemed to be primary in respect to any insurance which may be carried by National." It is National's contention that by these terms of the contract, it is clear that Sonesta's carrier is primarily liable and further that as Sonesta paid no premiums to National or its carrier, the Travelers, upon acquiring control of the three cars, the decisions in Susco Car Rental System of Florida v. Leonard, Fla. 1959, 112 So.2d 832, and Roth v. Old Republic Insurance Company, Fla. 1972, 269 So.2d 3, do not apply. In the Roth and Susco cases, it was determined as a matter of public policy that the owner's insurance carrier would be primarily responsible where the lessee purchased insurance from such carrier as part of the agreement for rental of the car. Sonesta contends that the only interpretation that can be given the contract is that the primary coverage mentioned in the contract pertains only to property damage of $100 and further that Roth is the controlling precedent for the case sub judice. From the record before the court, we are unable to determine whether Roth and Susco do apply as a matter of law.
Another issue raised by National is that even assuming that National's carrier is primarily responsible, the manuscript policy of 20 million dollars does not apply as coverage since it contains a specific exclusion that it will apply only if there is no other collectible insurance, nor is it even mentioned in the concession agreement between National and Sonesta. National contends that this aspect of the case is governed by Continental Casualty Company v. Weekes, Fla. 1954, 74 So.2d 367, which upheld a provision in an insurance policy that the insurance does not apply to liability for losses covered on a primary, contributory, excess or any other basis by insurance with another carrier, where such other coverage was, in fact, available.
Summary judgment is properly granted only when there is no genuine issue of material fact before the court. Holl v. Talcott, Fla. 1966, 191 So.2d 40. The record reflects that at the hearing on the motions of Sonesta and National for summary judgment, testimony was offered as to the content and interpretation of paragraph 8 of the concession agreement, quoted above. From this testimony and from the reading of the concession agreement, which in the opinion of this court is vague and ambiguous, it appears that there are issues of material fact which preclude entry *111 of summary judgment, namely the interpretation to be given the contract between National and Sonesta and the intention of the parties as to primary responsibility. Further, when additional testimony is adduced as to the intent and purpose of the contract between National Car and Sonesta, the court can then consider the significance, if any, of provisions in the policies of insurance which may portend to be mutually exclusive. As held in World Rent-A-Car, Inc. v. Stauffer, Fla.App. 1974, 306 So.2d 131, mutually non-covering escape clauses will be found to be repugnant and nugatory, thus coverage will be fully afforded under both policies. This holding is of import once the trial court makes a determination of the intent of the original contract.
Therefore, the summary judgments are reversed and the cause is remanded to the trial court with directions to proceed to a hearing on the merits.